Nesim Azer KALDAS; Morad Nasim Kaldas; Mazen Nasim Azer Kaldas, Petitioners

v.

ATTORNEY GENERAL OF the UNITED STATES, Respondent.

No. 08–4291.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 16, 2009.

Filed: Sept. 28, 2009.

Samy Beshay, Esq., New York, NY, for Petitioners.

Richard M. Evans, Esq., Thomas W. Hussey, Esq., Christina B. Parascandola, Esq., Scott Rempell, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, Michael B. Mukasey, Esq., Debevoise & Plimpton, New York, NY, for Respondent.

Before: SCIRICA, Chief Judge, CHAGARES and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Nesim Kaldas and his sons, Morad and Mazen Kaldas, petition for review of an order of the Board of Immigration Appeals ("BIA") dismissing their appeal of the Immigration Judge's ("IJ") decision denying their applications for relief from removal. We will deny the petition for review.

Kaldas and his sons are natives and citizens of Egypt. Kaldas and his son Morad came to the United States as visitors in 1995, and Kaldas's son Mazen came here as a visitor in 1996. In 2003, the Immigration and Naturalization Service issued notices to appear charging that Kaldas and his sons were subject to removal for staying here longer than permitted. Through counsel, Kaldas and his sons conceded that they are removable. Recognizing their ineligibility for asylum due to the one-year limitations period, they applied for withholding of removal and protection under the Convention Against Torture ("CAT"), claiming persecution based on their Coptic Christian religion.[1]

Kaldas testified that he, his father, and two brothers had a construction business in Egypt. Beginning in 1991, Kaldas bid for, but was not awarded, various building projects even though he was the lowest bidder. Kaldas submitted his bids to private general contractors that worked for the government. Kaldas stated that Islamic groups had taken over the committee charged with awarding the projects. He believed that he was not awarded the projects on account of his religion. Kaldas stated that the committee would have been aware of his religion based on his last name. Kaldas's income decreased from 1991 to 1994. He believed that if he stayed in Egypt he would not get any more work. As a result, Kaldas came to the United States.

Kaldas's brothers remained in Egypt. His brothers kept the business open for several years and then worked for other people. Kaldas's father passed away before Kaldas left Egypt. In 2003, one of Kaldas's brothers moved to the United States after he won the diversity lottery. His other brother came here in 2006.

Kaldas's sons also testified at the hearing before the IJ. Morad Kaldas testified that he did not have any problems in school in Egypt. Both sons stated that they had never been arrested. Mazen Kaldas testified that his father had trouble finding work in Egypt. Morad and Mazen believe that they will be incarcerated if removed to Egypt because they did not register for compulsory military service when they were 18 years old. Morad and

---

1. For ease of reference, we will refer to Nesim Kaldas in our discussion of the applications for relief from removal although his sons are also petitioners.

Mazen were 14 and 13 years old when they came to the United States.

The IJ found it unclear that the problems Kaldas had in securing bids were at such a level of economic detriment as to constitute persecution. The IJ noted that Kaldas did not seek to relocate or find comparable work based on his expertise in his field. The IJ also noted that it was general contractors, and not the government, that caused Kaldas's business problems. The IJ further found that the background materials did not show a pattern and practice of persecution against Coptic Christians in Egypt. The IJ also stated that conscription into the Egyptian army does not constitute persecution.

The IJ thus concluded that Kaldas and his sons failed to meet their burden of proof to show that they had been persecuted or would have a well-founded fear of persecution if they returned to Egypt. The IJ also found no evidence that the government of Egypt would torture Kaldas or his sons or would consent or acquiesce to their torture. The IJ denied withholding of removal and CAT protection, but granted voluntary departure.

The BIA agreed with the IJ that Kaldas and his sons failed to meet their burden to establish a clear probability that they would be persecuted and/or tortured by, or with the acquiescence of, Egyptian officials or anyone under the authority or control of the Egyptian government, for the reasons stated by the IJ. The BIA rejected Kaldas's argument that the IJ erred by inferring that his failure to present statements from his brothers was a failure to corroborate his testimony. The BIA found that the IJ appropriately asked Kaldas why his brothers did not testify or provide a state-

ment, that Kaldas's explanation that he did not know such a statement was necessary was not adequate, and that, in any event, the IJ cited to other substantial evidence to support his denial of relief. The BIA also rejected Kaldas's argument that the IJ failed to consider whether his sons would be incarcerated upon their arrival in Egypt due to their failure to complete compulsory military service. The BIA stated that the IJ had addressed this issue and noted that Kaldas had acknowledged that military service was required of all male citizens. The BIA granted voluntary departure. This petition for review followed.[2]

Kaldas argues in his brief that the economic deprivation he suffered rose to the level of persecution. He asserts that he was forced out of business. We have recognized that "the deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution." *Li v. Attorney General*, 400 F.3d 157, 168 (3d Cir. 2005). It is insufficient, however, for a petitioner to have faced only economic discrimination or to have been denied his preferred job. *Id.*

The record reflects that, beginning in 1991, Kaldas's bids on various projects were not accepted. Kaldas's income decreased over the next four years and his income "wasn't really enough to support [his] family." A.R. at 99. Kaldas did not seek other employment. After Kaldas left Egypt, the family business remained open for about three years and his brothers then worked for others as engineers. While Kaldas may have suffered discrimination, he did not show that the deliberate

---

**2.** The BIA also rejected Kaldas's argument that prison conditions in Egypt are so deplorable that his sons would face abuse equivalent to torture. In addition, the BIA declined to remand the proceedings so that Morad could pursue adjustment of status based on his marriage to a United States citizen. Kaldas has not raised these issues in his brief and they are not before us.

imposition of severe economic disadvantage threatened his life or freedom. Substantial evidence supports the IJ's conclusion that Kaldas did not show that his business problems were at such a level of economic detriment as to constitute persecution. *See Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001) (stating that, under the substantial evidence standard of review, the agency's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it).

Kaldas also challenges the IJ's suggestion that factors other than his religion may have caused the committee to award the contracts to others and the IJ's finding that the government did not cause his problems. It is unnecessary to address these arguments because, even if we assume that the committee did not award Kaldas the contracts on account of his religion, and that the discrimination was attributable to the government, as discussed above, the record does not compel the conclusion that such discrimination rose to the level of persecution. For the same reason, it is unnecessary to address Kaldas's challenges to the IJ's statements that he did not seek to relocate in Egypt and that his brothers did not provide statements on his behalf.

Kaldas further argues that there is a pattern and practice of persecution against Christians in Egypt. Although Kaldas points to evidence of discrimination against Christians in hiring for the public sector, this evidence does not establish a pattern and practice of persecution against Christians in Egypt. The country reports do not reflect a pattern and practice of persecution. Finally, Kaldas appears to argue that his sons were forced to leave Egypt due to religious persecution and thus their punishment for failing to serve in the military is also religious persecution. This argument lacks merit.

Accordingly, we will deny the petition for review.